IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TYVORIUS KEY, :
AIS #273817, :
    Plaintiff, :
     :
vs. : CIVIL ACTION 13-371-CG-M
     :
SGT. KIMBREL, :
    Defendant. :
     :

REPORT AND RECOMMENDATION

This is an action under 42. U.S.C. § 1983 brought by an Alabama prison inmate, Tyvorius Key, proceeding *pro se* and *in forma pauperis,* which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Plaintiff's Complaint (Doc. 1), Defendant Sergeant Kimbrel's Answer and Special Report (Docs. 18, 19), Plaintiff's Response in Opposition thereto, (Doc. 35), and Plaintiff's Motion for Summary Judgment (Doc. 38), which the Court will treat as a response to Defendant's Answer and Special Report. The Court has converted these documents into a Motion for Summary Judgment (Doc. 36), and, after consideration of such, and for the reasons set out below, it is recommended that Defendant's Motion for Summary Judgment be granted and that Plaintiff's action be dismissed with prejudice.

I. Facts and Proceedings

Based on the record before it, the Court summarizes the parties' relevant allegations as follows.

Plaintiff is an Alabama Department of Corrections ("ADOC") inmate currently serving a life sentence for Robbery First and Kidnapping Second convictions. He is currently housed at St. Clair Correctional Facility, but the events about which he complains took place while he was housed in segregation at Holman Correctional Facility ("Holman"). (Docs. 1, 17). As Defendants, Plaintiff names Sergeant Kimbrel ("Defendant Kimbrel") and Officer Andrews; however, only Defendant Kimbrel remains a Defendant, as Officer Andrews was dismissed without prejudice after several failed attempts at service.[1] (Doc. 36 at 4).

---

[1] In the *pro se* litigant context, a court may make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983). However, such protection does not exempt a *pro se* party from complying with relevant rules of procedural and substantive law." *Id.* Under Rule 4(m) a plaintiff must serve his defendant within 120 days after the filing of the complaint, or risk those claims being dismissed without prejudice. Rule 4(m) states in pertinent part:
> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant

> or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). Absent a showing of good cause, a district court has no discretion to salvage an action in the event of a violation of Rule 4(m). *Taylor v. Naphcare, Inc.,* 2006 WL 2038428, at *4 (M.D.Ala. Jul. 19, 2006)(*citing In re Cooper,* 971 F.2d 640, 641 (11th Cir. 1992)). Courts have found good cause under Rule 4(m) only when some outside factor such as reliance on faulty advice, rather than inadvertence or negligence, prevented service. *Prisco v. Frank,* 929 F.2d 603, 604 (11th Cir. 1991)(quotation marks omitted). Ignorance of the law, even in the context of *pro se* litigants, does not constitute good cause under Rule 4(m) of the Federal Rules of Civil Procedure. *See Williams v. Hodges,* 2010 WL 518776, at *5 (S.D.Tex. Jan. 31, 2010)(*citing Thompson v. Johnson,* Civil No. 7:05-0201-R (N.D. Tex. April 22, 2008) (dismissing an excessive force claim filed by a Texas inmate after repeated attempts at service of process were unsuccessful), *aff'd, Thompson v. Johnson,* No. 08-10614 (5th Cir. Oct. 6, 2009).

In light of Rule 4(m), it is evident that Officer Andrews was due to be dismissed without prejudice from Plaintiff's case for lack of service. Officer Andrews resigned from his employment with the ADOC on August 21, 2013, four days prior to the Court's attempts to effect service upon him. Under *Houston v. Lack*, 493 U.S. 920 (1989), Plaintiff filed his Complaint on July 18, 2013, thereby giving Plaintiff until November 18, 2013 to effect service on Officer Andrews. During this 120-day period, a request for waiver of service was sent to Officer Andrews at Holman. The request was returned unexecuted due to his resignation. Plaintiff was then ordered to supply the Court with Andrews' current address (Doc. 9), to which Plaintiff responded requesting that the Court perform a "nationwide search" to locate Officer Andrews. (Doc. 10). On December 2, 2013, and notably after the service period had expired, the Court ordered ADOC to submit under seal the last known address it had for Andrews, which ADOC did. (Docs. 20, 23). The Court then ordered another request for waiver of service, which was again not effected. Finally, on February 19, 2014, some three months after the 120-day

On June 18, 2013, at 9:00 p.m., Plaintiff contends that Officer Andrews handcuffed Plaintiff behind his back and escorted him to the shower area in the segregation unit. On the way there, Officer Andrews was immediately informed by Defendant Kimbrel to return Plaintiff to his cell due to a physical altercation between a guard and an inmate in another area of segregation. (Doc. 1 at 4). Plaintiff alleges that when he didn't move quickly enough to satisfy Officer Andrews, he "strucked [sic] [Plaintiff] in the mouth with a pair of iron handcuffs which caused extreem [sic] pain and permanent damage to [his] teeth."[2]

---

service period expired, the Court ordered the United States Marshal to personally serve Officer Andrews at his last known address supplied by ADOC. The Marshal was unable to personally serve Andrews resulting in the Court dismissing him without prejudice from this action on its own motion. (Doc. 36). In the interim, Plaintiff made no additional requests for extra time to serve Andrews, nor did he attempt to show good cause as to why Andrews should not be dismissed from the action.
    Applying Rule 4(m) to these facts, the Court was well within its discretion to dismiss Andrews without prejudice from the Complaint.
    Though Plaintiff may have stated claim of excessive force against Officer Andrews, *see infra* pp. 13-16, the Court cannot make an uncontroverted finding of liability as to this claim without Officer Andrews having the opportunity to defend it. Therefore, Plaintiff is cautioned that if he wishes to pursue this claim any further, he has until June 18, 2015 to do so before the statute of limitations forecloses on his right to sue. The claim against Defendant Kimbrel will be fully adjudicated herein.
    [2] Plaintiff does not indicate in any of his pleadings or responses that Officer Andrews punched him more than

(*Id.*). Plaintiff contends that he was cooperating with Officer Andrews' orders, and he was not posing a threat to himself, or others due to the behind-the-back handcuffs. (Doc. 35 at 1-2). Plaintiff additionally claims that Defendant Kimbrel was present when the incident occurred and "failed to intervene and prevent Officer Andrews from using violent and unnecessary force against [his] Eighth Amendment Constitutional Right." (Doc. 1 at 4-5).

Defendant Kimbrel filed his Special Report in response to Plaintiff's Complaint and attests that he was not in a position to intervene when the altercation took place. (Docs. 19, 19-1, 19-2). It bears noting that on June 18, 2013, the date in question, according to Defendant Kimbrel's submission, Holman was on the brink of a riot, and it was during this melee that Plaintiff was injured. (*Id.*).

On June 18, 2013, Defendant Kimbrel was assigned to supervise the segregation unit, specifically Cubicle #5, where he could view all inmates and shower teams. (Doc. 19-1 at 1). Around 8:15 p.m., an inmate viciously attempted to murder another officer right beside Cubicle #5. (*Id.*). Given his apparent close proximity to that

---

once; therefore, the Court assumes that Officer Andrews only struck Plaintiff one time during this altercation.

5

incident, Kimbrel was the first to the scene and stopped the assault from continuing any further. (*Id.* at 1-2). Once the inmate was under control, Kimbrel assisted in escorting the inmate to the infirmary; however, while in the infirmary, Kimbrel was notified of another inmate-on-officer assault in the segregation unit. (*Id.* at 2). In the second assault, an inmate slipped out of his handcuffs and gained entry to Cubicle #5 and was assaulting an officer there with a broken mop handle. (*Id.; see also* Doc. 19-2 at 5). The officer involved subdued this inmate with Sabre Red chemical agent. (Doc. 19-2 at 5). Meanwhile, yet another inmate engaged in assaulting another officer in Cubicle #5 and managed to handcuff that officer before opening several other inmates' cell doors by pressing random buttons on a control panel. (*Id.*). Receiving notice of these two additional assaults, Defendant Kimbrel rushed to Cubicle #5, but was unable to get through the gate because it was locked. (*Id.* at 3). Kimbrel retrieved the backup keys from Cubicle #4 to open #5 and once inside, he saw ten inmates standing outside their cells along with the handcuffed officer. (*Id.*). Kimbrel removed the handcuffs from the officer and then saw two other officers in an altercation with another unruly inmate. (*Id.*). Defendant Kimbrel assisted those officers

6

in gaining control of that inmate as additional emergency response teams arrived to aid in suppressing the riot. (*Id.*). The scene overall was dangerous and chaotic requiring all hands on deck to prevent further injuries or possible fatalities.

Due to his managing the chaos, Defendant Kimbrel expressly attests that he was not present when the alleged assault on Plaintiff occurred. He further contends that he has no knowledge of whether the altercation actually took place, as he was already engaged in suppressing the first fight when Officer Andrews arrived to provide assistance. (Doc. 19-1 at 2). Defendant Kimbrel also declares that once the first assault began, he never stepped onto any segregation tier for the remainder of the night. (*Id.*). Still, Plaintiff contends Defendant Kimbrel witnessed Officer Andrews striking Plaintiff in the mouth and failed to intervene. (Doc. 1 at 4).

In his Response and accompanying affidavit to Defendant Kimbrel's Special Report, (Doc. 35), Plaintiff contends that "Defendants [sic] fail to demonstrate that there is no facts disputed; and that the statement of material facts set forth in the complaint and the sworn affidavit attached herein clearly disputes Defendant's statement that he was not present when Plaintiff was

assaulted. The Court should deny Defendant's motion for judgment, appoint counsel for Plaintiff and set this case for a trial by jury." (Doc. 35 at 1). Plaintiff then reiterates his story that Defendant Kimbrel stood idly by as Officer Andrews assaulted him in the mouth with handcuffs. (Doc. 35 at 1-2). Plaintiff also attached to his Response his relevant medical records, which tend to prove the extent of his complained of injury and the treatment he received for it. (Doc. 35 at 7-18). Because Defendant Kimbrel does not dispute the authenticity of the medical records, the Court will treat them as undisputed and valid evidence that Plaintiff was indeed punched in the mouth and suffered a serious injury. *See* FED.R.CIV.P. 56(e)(2).

For relief, Plaintiff requests the Court to "award court cost [sic] and attorney fee's [sic], award punitive damages, grant Plaintiff court appointed counsel, grant a jury trial and injunctive relief." (Doc. 1 at 7).

## II. Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with the following basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment.

FED.R.CIV.P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED.R.CIV.P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "A mere 'scintilla'

of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Id. Additionally, it is well settled that a conclusion cannot be taken as true. Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno,* 115 F.3d 1555, 1564 n. 6 (11th Cir.1997); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment). Therefore, "[s]ummary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints

are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Brown v. Quality Corr. Healthcare, Inc.* 2014 WL 2916747, at *2-*3 (M.D.Ala. June 26, 2014)(*citing Beard v. Banks,* 548 U.S. 521, 525 (2006)(citation omitted). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

III. Discussion

a. 42 U.S.C. § 1983

As stated above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for the alleged injuries he received as a result of Officer Andrews punching him in the mouth with a pair of handcuffs, and for Defendant Kimbrel's failure to intervene in the altercation. (Doc. 1). Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

11

> at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (1994). Additionally, the Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

In *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being . . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – *e.g.*, food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*Id.* at 189-200 (citations omitted).

b. Excessive Force

To establish a constitutional violation for excessive use of force, Plaintiff must first show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, meaning defendant's conduct "shocks the conscience," *Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003), and, second, Plaintiff must show that "the officials act[ed] with a sufficiently culpable state of mind," *i.e.,* that they acted "maliciously and sadistically to cause harm." *Jacoby v. Mack*, 2014 WL 2435655, at *6 (S.D.Ala. May 30, 2014) (*citing Hudson v. McMillian,* 503 U.S. 1, 6-8 (1992)). A higher standard with a more culpable intent requirement is applied where a plaintiff claims the use of excessive force. *Flowers v. Bennett,* 135 F.Supp. 2d 1150, 1155 (N.D.Ala. Dec. 11, 2000). "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.' " *Skrtich v. Thornton,* 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986)).

Under *Whitley* and its progeny, the Supreme Court delineated factors used to determine whether there has been

a violation of the Eighth Amendment in the prison security context: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered. *Hudson,* 503 U.S. at 7 (citing *Whitley,* 475 U.S. at 321). While the extent of any injury is not alone dispositive of an excessive force case, it is "one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Id.; see also Hudson* at 10 (stating that blows causing bruising, swelling, loosened teeth and a cracked dental plate do not constitute a *de minimus* use of force).

As discussed in footnote 1, *supra,* p. 2, the Court finds that Plaintiff may not proceed against Officer Andrews on his excessive force claim without Officer Andrews being served and defending the allegations. Thus, under these circumstances, Plaintiff's excessive force claim would ordinarily fail as a matter of law. However, for the sole purpose of this Report in adjudicating Plaintiff's remaining claim against Kimbrel, and, out of an abundance of caution, the Court will address Plaintiff's excessive force claim on its merit. As to the first objective element, viewing the evidence in the light most

favorable to Plaintiff, the Court acknowledges that Andrews' actions *could* rise to the level of a constitutional violation.  Punching Plaintiff in the mouth with a pair of metal handcuffs while he was restrained to the back and complying with orders does appear to be excessive enough to shock the conscience of the Court. Thus, for purposes of this Report, the Court will treat the punch as rising to the level of a constitutional tort.

Regarding the second subjective element, for the purposes of adjudicating Plaintiff's remaining claim against Kimbrel, the Court will assume that Officer Andrews acted with a sufficiently culpable state of mind with malicious and sadistic intent to cause harm.  However, the Court reiterates its position that, without hearing from Officer Andrews and giving him the opportunity to defend, the Court cannot make an evidentiary finding that Officer Andrews acted with a sufficiently culpable state of mind.

While courts "recognize that corrections officials often must make decisions in haste, under pressure, and frequently without the luxury of a second chance," *Jacoby*, 2014 WL 2435655, at *6 (*citing Hudson,* 503 U.S. at 6), this leeway is not a license to unnecessarily brutalize inmates. On the other hand, an inmate is not at liberty to ignore or disobey, without consequence, the lawful orders of his

custodians or the rules and regulations of a jail.  *Id.*
(citation omitted).  "Strict adherence to rules and orders
within a penal institution's walls are necessary for
discipline, and even more importantly, for the safety and
security of inmates, guards, and visitors alike."  *Id.*

Plaintiff contends he was restrained and cooperating
with orders and thereby not posing a threat to himself or
others when Officer Andrews punched him in the mouth with
handcuffs for moving too slowly.  Accepting Plaintiff's
allegations as true, and for the purposes of this Report,
the Court assumes that Officer Andrews had a malicious and
sadistic state of mind when he intended to cause harm to
Plaintiff.

Therefore, for the sake of adjudicating Plaintiff's
remaining claims against Defendant Kimbrel, the Court
assumes without making a finding that Plaintiff has
established a viable excessive force claim against Officer
Andrews.[3]

---

[3] Plaintiff is cautioned that the Court has not made a finding on the merits of his excessive force claim, as to do so would require Officer Andrews to be served and to defend the claims.  If Plaintiff chooses to pursue his excessive force claim against Officer Andrews in the future, he still bears the burden of proving with sufficient and admissible evidence that Officer Andrews committed a constitutional tort against him.  Plaintiff is further cautioned that reliance on this Report as evidence of Officer Andrews' actions will be deemed insufficient, as

16

### c. Failure to Intervene

As to the liability of Defendant Kimbrel for failing to intervene, the Court finds that Plaintiff fails to demonstrate that a genuine dispute of material fact exists wherein a reasonable jury could find in Plaintiff's favor.

The Eighth Amendment is only violated by a prison official's deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan,* 511 U.S. 825, 828 (1994). "An officer who is present at the scene [of an altercation,] and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." *Jacoby,* 2014 WL 2435655, at *10 (*citing Hadley v. Gutierrez,* 526 F.3d 1324, 1330 (11th Cir. 2008). But, it must also be true that the non-intervening officer was in a position to intervene yet failed to do so. *Priester v. City of Riviera Beach, Fla.,* 208 F.3d 919, 924 (11th Cir. 2000). Therefore, if excessive force is not used, then an officer has no duty to intervene. *See Crenshaw v. Lister,* 556 F.3d 128, 1294 (11th Cir. 2009).

Despite the Court's assumption that Plaintiff met his burden of proof on his excessive force claim, the Court

---

there has been no evidentiary finding as to the merits of his excessive force claim.

finds that, even if Defendant Kimbrel were present, Plaintiff fails to prove Kimbrel could have anticipated and prevented Andrews from throwing the single punch that injured Plaintiff. *Hadley v. Gutierrez,* 526 F.3d 1324, 1330-31 (11th Cir. 2008). Prison guards are neither clairvoyant nor mind readers, and do not have the ability to know how another officer may react in any given situation. Even officers who are known to have a penchant for using excessive force cannot be predicted, and to hold an on-looking officer to that standard would be unreasonable. Giving an officer the discretion to maintain order, then crippling him with the burden of predicting his fellow officers' actions is counterintuitive to the purpose of penal institutions. To conclude otherwise would potentially negate the punitive scheme behind an inmate's conviction and sentence.

    Furthermore, it is well-settled that "not every malevolent touch by a prison guard gives rise to federal cause of action." *Hudson,* 503 U.S. 1, 9. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* at 9 (citations omitted). Therefore, the Court concludes that Defendant Kimbrel did not have an opportunity to intervene between Officer

Andrews and Plaintiff when Andrews administered the single punch which caused Plaintiff's serious injuries. *Johnson v. Stanton,* 2014 WL 2569019, at *5-*6 (S.D.Ala. June 9, 2014).

IV. Conclusion

Based on the forgoing reasons, this Court concludes that Defendant Kimbrel is entitled to summary judgment on all claims asserted against him by Plaintiff. Accordingly, it is recommended that Defendant's Motion for Summary Judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendant Kimbrel and against Plaintiff on all claims.

NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the

Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 8th day of August, 2014.

                                    s/BERT W. MILLING, JR.
                                    UNITED STATES MAGISTRATE JUDGE